**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EISA AFSHARINEJAD,

Plaintiff,

v.

SEYED TAHER KAMELI; KAMELI LAW GROUP, LLC; KAMELI LAW, P.C.; ARTHUR HICKSON; COASTAL TREATMENT FUND, LLC; and COASTAL TREATMENT CENTER NOKOMIS, LLC,

Defendants.

Case No.: 1:25-cv-07363

## COMPLAINT

Plaintiff Eisa Afsharinejad ("Plaintiff" or "Afsharinejad"), for his Complaint against Seyed Taher Kameli ("Kameli"); Kameli Law Group, LLC ("Kameli Law Group"); Kameli Law, P.C. ("KL"); Arthur Hickson ("Hickson"); Coastal Treatment Fund, LLC ("Coastal"); and Coastal Treatment Center Nokomis, LLC ("CTCN") (collectively "Defendants"), hereby alleges as follows:

## SUMMARY OF THE ACTION

1. This action involves claims of misrepresentation relating to Plaintiff's investment in Coastal and indirectly, CTCN.

2. The federal EB-5 visa program (the "Program"), administered by United States Citizenship and Immigration Services ("USCIS"), provides an opportunity for foreign nationals to obtain legal permanent residency in the U.S. by investing, at all relevant times, $500,000 or $1,000,000 in a commercial enterprise that creates at least ten qualified full-time U.S. jobs based on that investment.

3. The EB-5 Program does not permit investments by EB-5 investors in the form of direct loans. Instead, regional centers collect the investments of EB-5 investors into a pooled entity, which loans the funds directly to the intended party developing the project. These pooled entities are typically structured as limited partnerships or limited liability companies, with the manager being an entity created by the regional center. This structure provides the legal patina required to comply with the EB-5 Program's requirements while facilitating indirect investment by EB-5 investors into qualifying projects.

4. Plaintiff, a foreign national, invested $500,000 in Coastal.

5. CTCN is a company formed to develop, construct, and operate a rehabilitation facility in Florida and create 10 direct and/or indirect full-time equivalent jobs for qualifying U.S. workers.

6. Because federal law prohibits Plaintiff from directly investing in CTCN, Plaintiff invested through Coastal.

7. Kameli, Kameli Law Group, and KL acted as Plaintiff's immigration attorneys and, upon information and belief, were involved in drafting the offering documents for Plaintiff's investment in Coastal.

8. Plaintiff's Form I-526 petition was denied because CTCN failed to (1) develop, construct, and operate the required rehabilitation facility in Florida and (2) repay Plaintiff's loan.

9. Plaintiff has failed to qualify for a visa and has not received a return of any portion of his investment funds.

## PARTIES

10. Plaintiff Eisa Afsharinejad is an individual residing in Tehran, Iran and an investor in Coastal.

11. Defendant Seyed Taher Kameli is an individual residing in Chicago, Illinois. Kameli is the principal and sole owner of Defendant Kameli Law Group, LLC. Kameli is authorized to practice law in the state of Illinois.

12. Defendant Kameli Law Group, LLC is located at 111 E. Wacker Dr., Suite 555, Chicago, Illinois 60602. Kameli Law Group was involuntarily dissolved on July 9, 2021.

13. Defendant Kameli Law, P.C. is an Illinois corporation located at 155 N. Wacker Drive, Suite 4250, Chicago, Illinois 60606. KL previously operated under the name Kameli Law, Inc. On information and belief, Kameli continued his immigration representation of Plaintiff through KL after Kameli Law Group was dissolved.

14. Defendant Coastal Treatment Fund, LLC is a Florida limited liability company with, at all relevant times, a principal place of business at 4007 Sierra Drive, Austin, Texas 78731.

15. Defendant Arthur Hickson is an individual residing in Austin, Texas and, at all relevant times, was the Principal of TMH Companies and the Manager of Coastal.

16. Defendant Coastal Treatment Center Nokomis, LLC is a Florida limited liability company with a principal place of business at 28059 US-19 N, Suite 205, Clearwater, FL 33761. CTCN previously maintained an address at 119 N. Tamiami Trail, Nokomis, Florida 34275. Christopher Fox is the president of CTCN.

17. Kameli, Kameli Law Group, and KL are hereinafter collectively referred to as the "Law Firm Defendants."

## JURISDICTION AND VENUE

18. Jurisdiction exists pursuant to 28 U.S.C. § 1332. There is diversity of jurisdiction between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

19. This Court has personal jurisdiction over Defendants because they transact business

in this District and much of the conduct alleged in this Complaint occurred in this District.

20. Venue is proper because the events, omissions, and occurrences that give rise to this complaint, as well as any and all the acts committed upon Plaintiff by Defendants occurred in Chicago, Illinois.

## FACTS

21. Plaintiff sought a pathway to obtain U.S. residency pursuant to the EB-5 Program.

22. Plaintiff received Coastal's Private Placement Memorandum ("PPM") dated October 2017. A true and correct copy of the PPM is attached hereto as **Exhibit 1.**

23. According to the PPM, the purpose of Coastal was to

> provide up[ to] $2,000,000.00 funding (in the form of an investment loan) to [CTCN], formed to purchase real estate, and develop, construct/renovate, apply and obtain appropriate licenses, and operate a building, in Nokomis, Florida . . . as a rehab facility that will provide rehabilitation services to individuals (the "Project"). It is intended that the Project will create 10 fulltime equivalent positions from revenue as well as indirect and/or induced construction positions and/or any other method acceptable to the United States government for qualifying employees for each $500,000.00 of EB-5 investment funds loaned to CTCN.

**Exhibit 1** at 6.

24. Plaintiff also executed a Subscription Agreement with Coastal on March 23, 2018. A true and correct copy of the Subscription Agreement is attached as **Exhibit 2.** Pursuant to the Subscription Agreement, Plaintiff received one unit of LLC interest in Coastal in exchange for paying Coastal a $500,000 capital investment. In return, Plaintiff received a unit of interest in Coastal.

25. On December 1, 2018, Coastal and CTCN entered into a Loan Agreement ("Loan Agreement"). A true and correct copy of the Loan Agreement is attached as **Exhibit 3.** Section 2.1(d) of the Loan Agreement specifies Plaintiff's funds:

> shall initially be held by Lender in an interest bearing trust account for the benefit of each EB-5 Investor until such time as each such EB-5 Investor has been initially approved by the USCIS for temporary residency in the United States or there have been three (3) I-526 petition approvals issued to the EB-5 Investors participating as Limited partners in the Lender. Lender shall disburse each Tranche to Borrower as soon as commercially practicable after such approval or approvals have been obtained from the USCIS, but in any event in accordance with Section 2.1(a), provided that the Initial Funding shall not be less than the Minimum Initial Funding.

**Exhibit 3** at 2.1(d)(i).

26. Under the Loan Agreement, CTCN "shall use the proceeds of the Loan solely for the purpose of funding, or reimbursing expenses previously paid or incurred for, the Project . . . . Failure of Borrower to use the proceeds of the Loan in accordance with the terms and conditions of this Agreement . . . shall be a default pursuant to Section 9.1(h). *Id.* at 2.1(e).

27. The Loan Agreement specified that the loan maturity date was 72 months from the Initial Funding Date, making the debt due in 2024.

28. Coastal acquired rights to the property for the intended rehabilitation facility in December 2017.

29. On April 4, 2018. Law Firm Defendants filed Plaintiff's Immigrant Petition by Alien Entrepreneur (Form I-526) to USCIS.

30. The EB-5 Regional Center is required to invest the immigrant's capital contribution in a job-creating commercial enterprise that creates at least ten qualified full-time positions in the United States.

31. After an immigrant investor demonstrates to USCIS that his or her capital contribution was invested into a job-creating entity that produced at least ten qualified full-time jobs for U.S. workers based on the investment, the investor (and his or her immediate family) is granted U.S. lawful permanent residency through the filing and approval of an I-829 petition.

32. Unbeknownst to Plaintiff, CTCN's President—Christopher Fox—was arrested and

charged by the State of California with defrauding vulnerable homeowners out of more than $6 million. Fox ultimately pled guilty and was sentenced to 90 days in prison and 250 hours of community service.

33. Also unbeknownst to Plaintiff, on June 22, 2017, the United States Securities and Exchange Commission sued Kameli, and others, in the United States District of Illinois, Eastern Division, Case No. 1:17-cv-4686, in a case entitled *United States Securities and Exchange Commission v. Seyed Taher Kameli*, *et al*. (the "SEC Action").

34. According to the Second Amended Complaint in the SEC Action, Kameli induced numerous foreign investors to invest in multiple EB-5 entities, to accumulate EB-5 investor funds and improperly operate, divert, commingle, and/or use portions of those funds to benefit himself or other projects located in Illinois and Florida. Dkt No. 192, ¶¶ 5-12.

35. On November 3, 2021, Kameli signed a consent judgment in the SEC Action. Dkt. No. 241-1.

36. Kameli and Fox hid everything from Plaintiff.

37. On February 14, 2023, unbeknownst to Plaintiff, CTCN conveyed the Project property to Uproar Charter Holdings, LLC via a Special Warranty Deed for $3 million.

38. On April 5, 2023 USCIS issued a Notice of Intent to Deny (NOID) Plaintiff's Form 1-526 Petition. A copy of the NOID is attached as **Exhibit 4.** In the NOID, USCIS stated Plaintiff's "Form I-526 record does not sufficiently demonstrate by a preponderance of the evidence that: [a] the required amount of [Plaintiff]'s capital ($500,000) has been invested or is actively in the process of being invested; and [b] [Plaintiff] was the legal owner of the capital invested into the [enterprise]." *Id.* Plaintiff used multiple exchangers to transfer his purported funds through several accounts owned by exchangers other than the licensed exchanger listed in the record. *Id.* The NOID

asserted that Plaintiff was missing evidence demonstrating where the money in each entity's account came form; where the money from each entity's account was transferred to; evidence of bank account numbers; and legal owners of all bank accounts.

39. The April 5 NOID further states that Plaintiff failed to demonstrate that his capital was made available to the business(es) most closely responsible for job creation. Law Firm Defendants failed to attach a loan agreement between Coastal and CTCN. Additionally, USCIS stated it:

> [drew] an adverse inference with respect to capital being made available to the business(es) most closely responsible for job creation from the apparent criminal history of the manager of [CTCN], Mr. Christopher Wright Fox, AKA Chris Fox. Specifically, USCIS open-source research indicates that in 2011 Mr. Fox was arrested and charged by the State of California with defrauding vulnerable homeowners out of more than $6 million.
>
> Mr. Fox ultimately pled guilty and was sentenced to 90 days in prison and 250 hours of community service; his co-conspirator was sentenced to only 10 days in prison, suggesting that Mr. Fox was the more culpable of the two.

40. USCIS additionally determined that Plaintiff had not established the funds transferred derived from lawful means due to missing documentation.

41. Further, the NOID stated:

> [t]he overarching deficiency is that the project itself, which according to the business plan was supposed to by operational by April 2019, does not appear to have made any progress, beyond acquisition of the target property. USCIS bases this conclusion on the results of open-source searches, which indicate that the proposed project address (119 N Tamiami Trail, Nokomis, FL 34275) is currently occupied by a hotel called My Sarasota Getaway; Website: https://mysarasotagetaway.com. Open source searches also failed to provide any indication that plans were underway to establish a drug rehabilitation facility at the proposed project site at some point in the future.

*Id.* The submitted evidence further failed to demonstrate that the requisite number of jobs would be created using reasonable economic methodologies.

42. On May 5, 2023, the Law Firm Defendants issued a response to the NOID. A true

and correct copy of the Law Firm Defendants' response is attached hereto as **Exhibit 5**.

43. On June 30, 2023, USCIS sent to Plaintiff its decision affirming the findings in the NOID. USCIS maintained the denial was based on Law Firm Defendants' failure to establish that Plaintiff (1) had invested the required minimum amount of $500,000; (2) was the legal owner of the capital invested in the new commercial enterprise ("NCE"); (3) obtained the invested capital through lawful means; and (4) adequately responded to USCIS's questions in the NOID. A true and correct copy of USCIS's correspondence is attached hereto as **Exhibit 6**.

44. Law Firm Defendants either (i) misrepresented to Plaintiff that his documents and records would be sufficient for the Form I-526 petition or (2) failed to reasonably provide the requested information to USCIS, resulting in the denial of Plaintiff's petition.

45. On October 27, 2023, Kameli and Kameli Law wrote to Coastal and requested a refund of Plaintiff's investment pursuant to the PPM, which provides that:

> If USCIS denies Investor's I-526 Petition and for any reason, including without limitation, oversubscription, problems with the source of funds, and/or national security reasons, and such denial has been affirmed by Administrative Appeals Units and/or U.S. District Court, or if the Manager rejects Investor's Capital Contribution/Subscription as described herein, then those amounts of Capital Contribution previously paid to the Company shall be automatically converted to a one (1) year and automatically renewable simple interest loan to the Company (the "Investor Loan""), at either a rate of 2% APR or the current Internal Revenue Service (*IRS*) published annual short-term Applicable Federal Rate ("AFR") on the date of the denial or the date of the rejection, as the case may be, whichever is higher. The Investor Loan automatically renews on the anniversary of such date of the denial of Investor's I-526 Petition or such date of the rejection of Investor's Capital Contribution, as the case may be, with the AFR being recalculated based upon the then current IRS published annual short-term AFR. *The Company agrees to repay the Investor Loan and accrued interest to Investor within 1 years of such date of the last tribunal affirming denial of Investor's I-526 Petition* or such date of the rejection of Investor's Capital Contribution, as the case may be, or within one (1) year of CTCN's sale or refinancing of the Project and CTCN's repayment of the CTCN Loan to the Company, whichever occurs later. The Investor Loan shall be repaid pursuant to Investor's wiring instructions which do not violate United States laws and regulations.

A copy of this correspondence is attached as **Exhibit 7.**

46. On information and belief, CTCN refused to release the amount that should have been held in escrow to Kameli, or Kameli absconded with the funds.

47. On March 11, 2024, CTCN falsely represented to Plaintiff that all of the funds were deployed into the project and all required jobs were created, but no cash was available to repay investors.

48. On October 30, 2024, Arthur Hickson wrote to Plaintiff and stated Coastal was "in the process of securing a capital partner to refund [his] investment."

49. On October 31, 2024, CTCN informed Plaintiff that "all of the funds were properly received and deployed to the project," but "the project does not have any funds to pay any investor funds at this point in time."

50. Because Plaintiff's I-526 petition was rejected, he never received conditional permanent residence status.

51. Defendants refuse to return Plaintiff's $500,000.

## FIRST CAUSE OF ACTION
## VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND SEC RULE 10b-5.
**(By Plaintiff Against Defendants Kameli, Kameli Law Group, and KL)**

52. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth herein.

53. Plaintiff's investment in Coastal as part of his EB-5 visa application constitutes the purchase of a security. *SEC v. Feng*, 935 F.3d 721 (9th Cir. 2019).

54. Defendants Kameli, Kameli Law Group, and KL fraudulently induced Plaintiff to invest in Coastal by representing the funds would be used for the construction of a rehabilitation facility.

55. Defendants Kameli and Kameli Law Group also knowingly misrepresented the activities of Coastal, CTCN, and the SEC Action.

56. On information and belief, Defendants Kameli and Kameli Law Group diverted all of Plaintiff's funds to other projects and personal expenses.

57. Plaintiff refrained from acting (selling his interests, demanding further litigation, instituting legal proceedings against Defendants for their egregious failings in managing the Partnership) based upon the misrepresentations or omissions of material fact.

58. Plaintiff reasonably relied on Defendant Kameli's misrepresentations and omissions of material fact. Kameli owed Plaintiff fiduciary duties of loyalty and care under their agreement and Plaintiff had no reason to believe that Defendants would withhold material information from him.

59. As a direct and proximate result of Defendants' wrongful misrepresentations and omissions, Plaintiff has suffered damages plus interests, costs, and attorneys' fees, the exact amount to be proven at the time of trial.

**SECOND CAUSE OF ACTION**
**VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT**
**(By Plaintiff Against Defendants Kameli, Kameli Law Group, and KL)**

60. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth herein.

61. Plaintiff's investment in Coastal as part of his EB-5 visa application constitutes the purchase of a security. *SEC v. Feng*, 935 F.3d 721 (9th Cir. 2019).

62. On information and belief, Defendants have been knowingly providing false information to Coastal to lull Plaintiff into believing his investment was performing while these Control Defendants absconded with the funds from the company.

63. Plaintiff refrained from acting (selling his interests, demanding further litigation, instituting legal proceedings against the Defendants for their egregious failings in managing the Company) based upon the misrepresentations or omissions of material fact.

64. Plaintiff reasonably relied on these misrepresentations and omissions of material fact ultimately made by the Defendants to serve their illicit business objective of absconding with the funds of investors such as Plaintiff. The Defendants owed Plaintiff fiduciary duties of loyalty and care under the Agreement and Plaintiff had no reason to believe that these Defendants would withhold material information from him or cause false information to be provided upon which he would reasonably rely.

65. As a direct and proximate result of the Defendants' wrongful misrepresentations and omissions, Plaintiff has suffered damages plus interests, costs, and attorneys' fees, the exact amount to be proven at the time of trial.

**THIRD CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(By Plaintiff Against Defendant Hickson)**

66. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth herein.

67. To the extent necessary, this cause of action is pled in the alternative.

68. Defendant Hickson had fiduciary duties to Plaintiff as Manager of Coastal to operate Coastal and manage Plaintiff's investment with reasonable diligence, in good faith, and in accordance with representations he made to Plaintiff regarding the company's intended business and purpose as articulated in the Subscription Agreement. Defendant also owed Plaintiff a duty of care, loyalty, and not to engage in corporate waste.

69. Instead, Defendant was either grossly negligent or intentionally breached his

fiduciary duties to Plaintiff by taking (or allowing others to take) company funds for their own personal use unrelated to the Project.

70. Plaintiff has been harmed by Defendant's grossly negligent or willful and wanton conduct in an amount no less than $500,000.

71. In addition to the monetary damages that the Plaintiff has suffered, the acts of the Defendant were wrongful, dishonest, malicious, and oppressive, and Plaintiff seeks an award of punitive damages in an amount to punish the Defendant and to make an example to others that such conduct should not be awarded, in an amount to be proven at the time of trial.

**FOURTH CAUSE OF ACTION**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(By Plaintiff Against All Defendants)**

72. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth herein.

73. To the extent necessary, this cause of action is pled in the alternative.

74. As specifically described above, Defendants' grossly negligent and/or intentional bad acts were a breach of their duties owed to Plaintiff.

75. Defendants knowingly aided and abetted breaches of fiduciary duties owed to Plaintiff by absconding with Plaintiff's funds or turning a blind eye to others who were absconding with Plaintiff's funds.

76. Plaintiff was damaged by Defendants' action in an amount no less than $500,000.

**FIFTH CAUSE OF ACTION**
**CONVERSION**
**(By Plaintiff Against All Defendants)**

77. Plaintiff hereby incorporates all paragraphs set forth above as if set forth fully herein.

78. To the extent necessary, this cause of action is pled in the alternative.

79. Defendants wrongfully exercised dominion over Plaintiff's investment by making payments to themselves and their affiliates and/or refusing to return Plaintiff's investment funds pursuant to the terms of the Loan Agreement between Coastal and CTCN after Plaintiff's I-526 Petition was denied.

80. As a result, Plaintiff was damaged by Defendants' action in an amount no less than $500,000.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(By Plaintiff Against All Defendants)**

81. Plaintiff hereby incorporates all paragraphs set forth above as if set forth fully herein.

82. To the extent permitted by law, Plaintiff seeks restitution for Defendants' unjust enrichment.

83. Plaintiff provided $500,000 to Defendants for the development and operation of the Project.

84. Instead of using the funds for the Project, Defendants made payments to themselves and their affiliates.

85. As a result, Plaintiff was damaged by Defendants' action in an amount no less than $500,000.

**SEVENTH CAUSE OF ACTION**
**CIVIL CONSPIRACY**
**(By Plaintiff Against All Defendants)**

86. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth herein.

87. To the extent necessary, this cause of action is pled in the alternative.

88. Defendants conspired with each other to violate their duties to Plaintiff as set forth above by committing one or more overt acts pursuant to a common design. Each of the Defendants were united by a common interest in absconding with Plaintiff's funds and hiding their wrongful conduct.

89. Plaintiff has been damaged in an amount no less than $550,000, as a direct and proximate result of the conspiracy.

**EIGHTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(By Plaintiff Against Defendants Coastal and CTCN)**

90. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth herein.

91. To the extent necessary, this cause of action is pled in the alternative.

92. Plaintiff invested $500,000 in Coastal with the contractual understanding that the funds would be lent to CTCN to develop, construct, and operate a rehabilitation center.

93. Moreover, Coastal and CTCN entered into the Loan Agreement. Plaintiff is an intended third-party beneficiary for the Loan Agreement between Coastal and CTCN.

94. Coastal breached the PPM and Operating Agreement by failing to ensure construction of the rehabilitation facility and compliance with the EB-5 Program requirements and return Plaintiff's loan.

95. CTCN failed to (1) develop, construct, and operate the required rehabilitation facility in Florida and (2) repay the loan. CTCN also misrepresented the status of the Project, falsely claiming it was completed and that all funds were tied up in the Project.

96. After Plaintiff's I-529 Petition was denied, CTCN failed to maintain Plaintiff's

investment in an interest bearing trust account for his benefit until he was initially approved and/or CTCN returned Plaintiff's investment to Coastal, but Coastal gave or lent Plaintiff's funds to Defendants and their affiliates.

97. Plaintiff has been harmed by Defendants' breaches of contract in an amount no less than $500,000.

**NINTH CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(By Plaintiff Against Coastal)**

98. Plaintiff hereby incorporates all paragraphs set forth above as if set forth fully herein.

99. To the extent permitted by law, this cause of action is pleaded in the alternative.

100. The Subscription Agreement between Plaintiff and Coastal contained an implied covenant of good faith and fair dealing, whereby Defendant Coastal was to act in good faith and not deny Plaintiff bargained-for benefits under the Subscription Agreement.

101. Defendant Coastal breached the implied covenant with respect to the Subscription Agreement as set forth herein.

102. Defendant Coastal failed to utilize the funds as contemplated by the parties.

103. Plaintiff has been harmed by Coastal's breach of contract in an amount no less than $500,000.

**TENTH CAUSE OF ACTION**
**MALPRACTICE**
**(By Plaintiff Against Defendants Kameli, Kameli Law Group, and KL)**

104. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth herein.

105. To the extent necessary, this cause of action is pled in the alternative.

106. Plaintiff had an attorney-client relationship with Defendants Kameli, Kameli Law Group, and KL.

107. Defendants Kameli, Kameli Law Group, and KL breached their duty of care to Plaintiff by inducing him to invest directly in Coastal and indirectly in CTCN, without disclosing their involvement in drafting the operating documents of these entities.

108. On information and belief, Defendants then diverted Plaintiff's funds to projects unrelated to Coastal.

109. The rehabilitation facility was never built.

110. Nevertheless, Defendants refuse to return Plaintiff's investment.

**DEMAND FOR JURY**

111. Plaintiff demands a jury trial for determination as to all causes of action as herein alleged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief against Defendants as follows:

1. For any and all economic damages according to proof which at this time are believed to be $500,000.00;

2. For costs of suit incurred herein;

3. For any and all prejudgment interest, post judgment interest according to proof;

4. For attorneys' fees and costs that are allowed by law;

5. For punitive damages against Defendants in an amount to be determined according to proof at trial;

6. For any and all contractual and equitable relief allowed by law;

7. For general damages according to proof;

8. For an accounting; and

9. For such other and further relief as the Court deems just and proper.

Dated: June 30, 2025

**LAW OFFICES OF ROBERT V. CORNISH, JR., PC**

/s/ Keren E. Gesund
Keren E. Gesund
Law Offices of Robert V. Cornish, Jr., PC
680 South Cache Street, Suite 100, P.O. Box 12200
Jackson, WY 83001
Office: (702) 300-1180
Fax: (571) 290-6052
keren@rcornishlaw.com

*Attorneys for Plaintiff Eisa Afsharinejad*